IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| GILBERT BRYAN,<br><br>　　　Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br>　　　Defendant. | Civil Action No. 5:25-cv-585-D |

### EXPERIAN INFORMATION SOLUTIONS, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(a), Defendant Experian Information Solutions, Inc. ("Experian"), by its undersigned counsel, respectfully submits the following statement of material facts as to which there is no genuine issue to be tried:

1. Experian is a consumer reporting agency as defined by the FCRA and maintains credit files for millions of consumers. Declaration of Christina Hamilton (**Exhibit A** of Appendix, "Exp. Decl.") ¶ 2.

2. Plaintiff is a consumer as defined by the FCRA. *Id*. ¶ 3.

3. Experian maintains procedures to assure maximum possible accuracy of the information it reports on consumers consistent with the requirements of the FCRA. *Id*. ¶ 4.

4. Experian, like the other major credit reporting agencies ("CRAs"), regularly receives consumer credit information from various sources ("furnishers") around the country. Experian only allows entities whom it thoroughly vets to contribute consumer credit information in accordance with strict contracted obligations, mentioned again below for emphasis. *Id*. ¶ 5.

5. The process by which Experian receives, sorts, and stores information is largely

electronic. *Id*. ¶ 6.

6. Experian monitors every monthly submission by every data furnisher to ensure that no information violates the prescriptions of the FCRA or the industry standards applicable to their data. *Id*. ¶ 7.

7. Data furnishers are contracted and pledge to make every effort to report only accurate information and adhere to the FCRA sections applicable to their reporting. *Id.* ¶ 8.

8. Experian also thoroughly credentials every data furnisher and its data before and after it is permitted to transmit information for inclusion in the credit reporting database. Experian has systemic processes which alert it if a data furnisher's monthly submission exceeds expected thresholds or alters from its trended and usual reporting patterns. *Id*. ¶ 9.

9. These include banks, credit unions, automobile dealers, student loan providers and others (these sources are known as "furnishers" within the credit reporting industry and under the FCRA). *Id*. ¶ 10.

10. Section 1681i of the FCRA requires Experian to reinvestigate information disputed by any of these consumers. Experian maintains procedures to ensure that its reinvestigations are reasonable and consistent with the requirements of the FCRA. *Id*. ¶ 11.

11. Generally, when a consumer contacts Experian to dispute the accuracy of an account on the consumer's credit file, Experian will first consider and review all relevant information provided by consumer. If the consumer provides supporting documentation with the dispute, Experian reviews the documentation to determine whether it can be authenticated, and if it is sufficient to delete or update the account as requested by the consumer. If the supporting documentation is not sufficient to delete or update the account as requested by the consumer, Experian initiates its reinvestigation via an electronically transmitted, automated dispute

2

verification form ("ACDV") to the source, or furnisher, of the disputed information. *Id.* ¶ 19.

12. Accordingly, the furnisher will either verify the account as reported, instruct Experian to modify any information regarding the account, or delete the disputed information if it is found to be inaccurate. When data furnishers respond to an ACDV or CDV, they certify to Experian that they have (i) reviewed all information, correspondence, and documents forwarded by Experian, and (ii) confirmed the accuracy of the information contained in the data furnisher's response. Experian then reviews the data furnisher's ACDV or CDV response in accordance with Experian's own policies and procedures and afterward updates its reporting accordingly. *Id.* ¶ 20.

13. On December 9, 2024, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), CFPB # 241209-17351732, in which he claimed five (5) accounts were impacted by identity theft. None of these accounts are the subject of the present lawsuit.

14. On December 13, 2024, Experian communicated with Plaintiff regarding his December 9, 2024 dispute and identity theft claims and informed Plaintiff of why Experian was declining Plaintiff's request to block one or more items of information. Exp. Decl. ¶ 31, Ex. K.

15. Plaintiff submitted a Federal Trade Commission Identity Theft Report ("ITR") on or about July 11, 2025, which identified only one account as fraudulent. That account was an LVNV account that is not referenced by Plaintiff in this litigation. *Id.* ¶ 44. The LVNV tradeline is also not the subject of the present lawsuit.

16. Within four business days of receipt, Experian blocked that LVNV account and informed Plaintiff of that action on July 17, 2025. ¶ 45, *Id.* Ex. I.

17. Neither theft report includes any of the Disputed Accounts. No USAA accounts are listed and the JPMCB account identified ends in a different account number (6570) than the JPMCB account (5485) that is the subject of this litigation. *Compare* Compl. ¶ 7 with Ex. A

3

attached thereto.

18. Plaintiff filed his Complaint ("Compl.") on or about August 11, 2025, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681i, 1681c-2, and 1681n (the "FCRA Claims") and of the U.S. Bankruptcy Code, 11 U.S.C. §§ 524(a)(2) and 525(a) (the "Bankruptcy Claims"). Compl. ¶¶ 14-15 and 17-22.

19. All of Plaintiff's claims arise from the following accounts: (1) JPMCB (XXXXXXXX5485) (the "JPMCB Account"); (2) USAA Federal Savings Bank (XXXXXXXX4916) (the "USAA Account #1"); and (3) USAA Federal Savings Bank (XXXXXXXX0710) (the "USAA Account #2") (collectively, the "Disputed Accounts"). Compl. ¶¶ 7-13.

20. On May 12, 2025, Plaintiff filed a complaint with the CFPB, CFPB # 250512-20730825, in which he alleged the reporting of the Disputed Accounts in violation of the U.S. Bankruptcy Code. Attached to that complaint were multiple "notarized Certificate of Discharge" on "Official Substitute Form 101" ("Form 101") indicating the Plaintiff's discharge under Chapter 11 of the Bankruptcy Code on various dates in 2021.

21. This Court can take judicial notice that Official Form 101 is a petition for bankruptcy, not an order of discharge.

22. The Form 101s did not include a complete case number, did not contain a PACER header, and was signed in the presence of a notary by the Plaintiff, not a member of the court. Further, the Form 101s indicated discharge dates in 2021, but was executed May 12, 2025.

23. A search of the National Pacer Locator using Plaintiff's complete social security number for any bankruptcy filing yields no results.

4



24. This Court can take judicial notice of the records of the United States Bankruptcy Courts that do not have any record of a bankruptcy filing let alone discharge by the Plaintiff.

25. Also attached to this CFPB Complaint and as Exhibit B to Plaintiff's complaint were purported 1099-Cs for the Disputed Accounts.

26. On each and every 1099-C, the drafter :

   1. incorrectly identified the Plaintiff as the creditor and not the debtor;

   2. incorrectly identified the creditor as the debtor Plaintiff;

   3. incorrectly placed the Plaintiff's social security number in the section for the creditor's Tax Identification Number ("TIN");

   4. incorrectly placed the creditors' TINs in the section for the Debtor (Plaintiff); and,

   5. identified the Identifiable Event Code as "A" – a chapter 11 Bankruptcy discharge despite there being no record of such a bankruptcy.

28. The May 2025 dispute references the two USAA accounts subject to the current dispute and four other accounts. Experian reinvestigated Plaintiff's May 2025 dispute via electronically transmitted dispute verification forms (the "ACDVs"). In response to the disputes submitted by Plaintiff, the furnishers confirmed the accuracy of Experian's reporting. Exp. Decl.

5

¶¶ 38-41, Exs. M-N. Once the reinvestigation was completed, Experian sent a notice and summary of the results to Plaintiff on May 29, 202 5. Exp. Decl. ¶ 26, Ex. F.

29. On June 13, 2025, Plaintiff filed a complaint with the CFPB, CFPB # 250614-21547062, in which he incorrectly alleged that Experian had not responded to his May 12, 2025, CFPB complaint within 30 days.

30. Experian reinvestigated Plaintiff's disputes via ACDVs. Exp. Decl. ¶¶ 32-41, Exs. L-N. In response to the disputes submitted by Plaintiff, the furnishers confirmed the accuracy of Experian's reporting. Exp. Decl. ¶¶ 32-41, Exs. L-N.

31. Once a reinvestigation is complete, Experian sends a notice and summary of the results to the consumer. Experian internally refers to that notice and summary as a Consumer Disclosure Final ("CDF"). Exp. Decl. ¶ 19. Experian provided Plaintiff with dispute results on December 9, 2024, December 13, 2024, December 30, 2024, January 2, 2025, January 6, 2025, May 29, 2025, June 20, 2025, July 17, 2025, and July 25, 2025. Exp. Decl. ¶¶ 21-30, Exs. A-J.

32. On July 5, 2025, Plaintiff made a request for method of verification "MOV".

33. On March 24, 2025, May 20, 2025, and July 17, 2025, Experian provided Plaintiff with letters that provide Plaintiff with the methods Experian used to verify its reporting. The dispute results provided by Experian also include responses to Plaintiff's MOV requests. Exp. Decl. ¶ 42, Exs. A-J, O.

**[SIGNATURE ON FOLLOWING PAGE]**

Dated: February 17, 2026              Respectfully Submitted,

/s/ R. Kyle Driggers
R. Kyle Driggers (N.C. Bar No. 62334)
TROUTMAN PEPPER LOCKE LLP
305 Church at N. Hills St., #1200
Raleigh, NC 27609
Telephone: 919-835-4145
Email: kyle.driggers@troutman.com

*Counsel for Defendant Experian Information Solutions, Inc*

# CERTIFICATE OF SERVICE

I certify that on February 17, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served via regular mail upon:

Gilbert Bryan
5506 Dodge Drive
Fayetteville, NC 28303
*Pro Se Plaintiff*

>                          */s/ R. Kyle Driggers*
>                          R. Kyle Driggers