# EXHIBIT A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| GILBERT BRYAN,<br>      Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br>      Defendant. | Civil Action No. 5:25-cv-00585 |

## DECLARATION OF CHRISTINA HAMILTON IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

NOW COMES Christina Hamilton, who declares under penalty of perjury, as follows:

1. I am over the age of eighteen and make this declaration in support of Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment. I am employed by Experian as a Senior Litigation Analyst and in that capacity regularly work with the business records of Experian and testify on its behalf. These business records are recorded contemporaneously at the time of their creation and stored in the ordinary course of business. I make this declaration after a review of these business records.

2. Experian is a consumer reporting agency as defined by the FCRA and maintains credit files for millions of consumers.

3. Plaintiff is a consumer as defined by the FCRA.

4. Experian maintains procedures to assure maximum possible accuracy of the information it reports on consumers consistent with the requirements of the FCRA.

5. Experian, like the other major credit reporting agencies ("CRAs"), regularly receives consumer credit information from various sources ("data furnishers") around the country. Experian only allows entities whom it thoroughly vets to contribute consumer credit information in accordance with strict contractual obligations, mentioned again below for emphasis.

6. The process by which Experian receives, sorts, and stores information is largely electronic.

7. Experian monitors every monthly submission by every data furnisher to assure that no information violates the prescriptions of the FCRA or the industry standards applicable to their data.

8. Data furnishers are contracted and pledge to make every effort to report only accurate information and adhere to the FCRA sections applicable to their reporting.

9. Experian also thoroughly credentials every data furnisher and its data before and after it is permitted to transmit information for inclusion in the credit reporting database. Experian has systemic processes which alert it if a data furnisher's monthly submission exceeds expected thresholds or alters from its trended and usual reporting patterns.

10. These include banks, credit unions, automobile dealers, student loan providers and others (these sources are known as "furnishers" within the credit reporting industry and under the FCRA).

11. Section 1681i of the FCRA requires Experian to reinvestigate information disputed by a consumer. Experian maintains procedures to ensure that its reinvestigations are reasonable and consistent with the requirements of the FCRA.

12. The exhibits attached to Plaintiff's Complaint demonstrate that, on or about December 9, 2024, May 12, 2025, and in June 2025, Plaintiff, Gilbert Bryan ("Plaintiff"),

communicated with Experian regarding disputes involving specific tradelines, an alleged bankruptcy discharge, alleged IRS Forms 1099-C, and an identity theft affidavit.

13. The following disputed accounts are referenced in Plaintiff's complaint:

   a. JPMBC Card ending in 5485.

   b. USAA Federal Savings Bk ending in 4916.

   c. USAA Federal Savings Bk ending in 0710.

14. In Plaintiff's Complaint and the documents attached thereto, Plaintiff claimed that the accounts were being reported inaccurately based on, among other things, a bankruptcy discharge and identity theft.

15. The December 9, 2024 dispute is specific to the JPMBC Card tradeline.

16. The May 12, 2025 dispute specifically requests deletion of certain tradelines based on Plaintiff's alleged bankruptcy and alleged 1099-C forms.

17. The June 2025 dispute references Experian's alleged failure to respond to the May 12, 2025 dispute.

18. Plaintiff made a request for method of verification ("MOV") on or about July 5, 2025.

19. Generally, when a consumer contacts Experian to dispute the accuracy of an account on the consumer's credit file, Experian will first consider and review all relevant information provided by the consumer. If the consumer provides supporting documentation with the dispute, Experian reviews the documentation to determine whether it can be authenticated and whether it is sufficient on its face to delete or update the account as requested by the consumer. If the supporting documentation is not sufficient to delete or update the account as requested, Experian initiates its reinvestigation via an electronically transmitted Automated Consumer Dispute Verification form ("ACDV") to the source, or

- PAGE 2

furnisher, of the disputed information. Once the reinvestigation is complete, Experian sends a notice and summary of the results to the consumer. Experian internally refers to that notice and summary as a Consumer Disclosure Final ("CDF").

20. In response to an ACDV, the furnisher will either verify the account as reported, instruct Experian to modify any information regarding the account, or delete the disputed information if it is found to be inaccurate. When data furnishers respond to an ACDV or CDV, they certify to Experian that they have (i) reviewed all information, correspondence, and documents forwarded by Experian, and (ii) confirmed the accuracy of the information contained in the data furnisher's response. Experian then reviews the data furnisher's ACDV or CDV response in accordance with Experian's own policies and procedures, and afterward updates its reporting accordingly.

21. A true and correct copy of the December 9, 2024 dispute response is attached hereto as **Exhibit A**.

22. A true and correct copy of the December 13, 2024 dispute response is attached hereto as **Exhibit B**.

23. A true and correct copy of the December 30, 2024 dispute response is attached hereto as **Exhibit C**.

24. A true and correct copy of the January 2, 2025 dispute response is attached hereto as **Exhibit D**.

25. A true and correct copy of the January 6, 2025 dispute response is attached hereto as **Exhibit E**.

26. A true and correct copy of the May 29, 2025 dispute response is attached hereto as **Exhibit F**.

27. A true and correct copy of the June 20, 2025 dispute response is attached hereto as **Exhibit G**.

28. A true and correct copy of the June 20, 2025 letter sent from Experian to Plaintiff requesting additional information to respond to Plaintiff's dispute and a true and correct copy of the June 20, 2025 dispute results are attached hereto as composite **Exhibit H**.

29. A true and correct copy of the July 17, 2025 dispute response is attached hereto as **Exhibit I**.

30. A true and correct copy of the July 25, 2025 dispute response is attached hereto as **Exhibit J**.

31. True and correct copies of the communications from Experian to Plaintiff regarding identity theft, dated December 9, 2024, December 13, 2024, April 9, 2025, and July 17, 2025, are attached hereto as composite **Exhibit K**.

32. Also on December 13, 2024, Experian sent an ACDV to the furnisher of the disputed JPMBC Card account. A true and correct copy of those ACDVs is attached hereto as composite **Exhibit L** ("**Exhibit L**").

33. The furnisher verified the accuracy of the reporting information to Experian on December 18, 2024. See **Exhibit L**.

34. On March 24, 2025, Experian also sent an ACDV to the furnisher of the disputed JPMBC Card account. A true and correct copy of that ACDV is attached hereto as **Exhibit L**.

35. The furnisher verified the accuracy of the reporting information to Experian on March 28, 2025. See **Exhibit L**.

36. On July 17, 2025, Experian also sent an ACDV to the furnisher of the disputed JPMBC Card account. A true and correct copy of that ACDV is attached hereto as **Exhibit L**.

37. The furnisher verified the accuracy of the reporting information to Experian on July 25, 2025. See **Exhibit L**.

38. On May 20, 2025, Experian sent an ACDV to the furnisher for USAA Federal Savings Bk ########4916. A true and correct copy of that ACDV is attached hereto as composite **Exhibit M**.

39. The furnisher verified the accuracy of the reporting information to Experian on May 23, 2025. See **Exhibit M**.

40. Also on May 20, 2025, Experian sent an ACDV to the furnisher for USAA Federal Savings Bk ######0710 A true and correct copy of that ACDV is attached hereto as **Exhibit N**.

41. The furnisher verified the accuracy of the reporting information to Experian on May 23, 2025. See **Exhibit N**.

42. Experian provided responses to Plaintiff's MOV requests on March 24, 2025, May 20, 2025, and July 17, 2025. The letters in response to Plaintiff's MOV requests are attached as composite **Exhibit O**. Additionally, Exhibits **A, B, C, D, E, F, G, H, I, and J** contain responses to Plaintiff's MOV requests.

43. On or about December 5, 2024, Plaintiff filed a dispute with the Consumer Financial Protection Bureau in which he identified five accounts as the result of identity theft:

44. Plaintiff submitted an Identity Theft Report ("ITR") on or about July 11, 2025, which identified only one account as fraudulent. That account was an LVNV account that is not referenced by Plaintiff in this litigation.

45. Within four business days of receipt, Experian blocked that LVNV account and informed Plaintiff of that action on July 17, 2025. The letter memorializing the deletion of the

- PAGE 2

tradeline is attached as **Exhibit I**.

FURTHER DECLARANT SAYETH NOT.

Dated: February 13, 2026

*Christina Hamilton*

Experian Information Solutions, Inc.

Its: Senior Litigation Analyst

- PAGE 2