# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

GILBERT BRYAN,

      **Plaintiff,**

**v.**

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**

      **Defendant.**

**Civil Action No. 5:25-cv-585-D**

## EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Experian Information Solutions, Inc. ("Experian"), by counsel, respectfully submits this Reply in support of its Motion for Summary Judgment (Dkt. 22, the "Motion" or "Motion for Summary Judgment"). For the reasons outlined below, and those asserted in Experian's Motion, summary judgment should be granted.

Plaintiff's opposition does not show: (1) that Experian reported any information that was materially inaccurate or incomplete or (2) that Experian failed to conduct a reasonable reinvestigation or to comply with the Fair Credit Reporting Act ("FCRA"). The documents Plaintiff himself attaches, especially his CFPB complaints and Experian's written responses, confirm that Experian followed the dispute-handling procedures contemplated by 15 U.S.C. § 1681i and that the furnishers verified the disputed tradelines as accurate. Plaintiff's persistent disagreement with those outcomes does not create a genuine dispute of material fact.

## I.      PLAINTIFF IDENTIFIES NO EVIDENCE OF ACTUAL INACCURACY

An inaccuracy is a threshold requirement for a claim under FCRA for failure to conduct a reasonable reinvestigation of disputed information. *See Dawkins v. Experian Info. Sols., Inc.,* No.

6:22-CV-00774-TMC-JDA, 2022 U.S. Dist. LEXIS 218459 at *8 (D.S.C. Oct. 18, 2022); *McDaniel v. Hunter Warfield, Inc*., No. 5:23-CV-732-D, 2024 U.S. Dist. LEXIS 75885 (E.D.N.C. Apr. 25, 2024) (collecting cases). Plaintiff's 15 U.S.C. §§ 1681e(b) and 1681i claim fails because he cannot demonstrate that the Disputed Accounts are inaccurate.

**A. Plaintiff's own exhibits show the tradelines belonged to him and were valid accounts.**

Plaintiff states that his disputes focus on the (1) JPMCB account ending in 5485, (2) USAA Federal Savings Bank account ending in 4916, and (3) USAA Federal Savings Bank account ending in 0710. *See* Dkt. 33-1 ¶ 3.

Plaintiff's May 12, 2025 CFPB complaint lists those same accounts—by masked number and creditor name ("JP MORGAN CHASE/****5485," "USAA Federal Savings BK/****4916," and "USAA Federal Savings BK/****0710"). (Dkt. 33-3 at 2.)

Plaintiff attaches alleged 1099-C Forms issued in his own name and Social Security number referencing those same creditors and Apple/Goldman Sachs, Discover, and U.S. Bank reporting alleged cancellation of indebtedness on accounts he acknowledges are his (Dkt. 33-5 at 2–5).

Even assuming the Forms 1099-C are authentic, they are admissions that Plaintiff was the debtor on the accounts in question and thus undermine any claim of identity theft. There is no evidence that Experian reported someone else's accounts as Plaintiff's, misreported the owner of the tradelines, or confused his file with another consumer.

**B. Neither the suspect Forms 1099-C nor the self-created 'certificates of discharge' render Experian's reporting inaccurate.**

Plaintiff's primary theory is that because he has alleged the existence of Form 1099-C and "Certificate of Discharge in Bankruptcy" documents, Experian was required to delete the

tradelines or report them as "discharged" in some particular way. (See Dkt. 33-4 at 2, demanding that certain accounts "be deleted immediately.") But he offers no evidence that the status or balance information Experian reported, as of the relevant times, was factually false.

Experian's role is to accurately report information furnished by creditors and to reinvestigate disputes: it is not to independently adjudicate the legal effect of an alleged 1099-C or a consumer's own "certificate." The FCRA does not require Experian to override verified furnisher data simply because a consumer believes a suspect tax form or self-styled "bankruptcy" document means a debt should no longer appear on his credit report.

The "Certificates of Discharge in Bankruptcy" Plaintiff attaches (Dkt. 33-4 at 4–9) are not official orders of a bankruptcy court. They are documents drafted and signed by Plaintiff, notarized, and labeled "Official Substitute Form 101." They bear neither the signature of a bankruptcy judge nor the seal or signature of a clerk. Experian is not obliged to treat such self-generated papers as evidence of a legal discharge that would invalidate information verified and reported by the furnishers. Especially when an independent search of PACER indicates that no such bankruptcy filing exists. Dkt. 28 ¶ 34.

To the extent Plaintiff invokes 11 U.S.C. §§ 524 and 525, those are Bankruptcy Code provisions governing the effect of discharge and discrimination by creditors and governmental units. They do not impose an obligation on consumer reporting agencies to delete historically accurate tradelines, nor do they create an FCRA violation for maintaining accurate historical account information.

**C. Plaintiff's "Affidavit of Identity" rests on a personal legal theory, not factual inaccuracy.**

Plaintiff also relies on an "Affidavit of Identity" Dkt. 33-6 claiming that creditors and Experian must produce a "nine-digit control number" from the back of his Social Security card to verify any account, and that failure to do so proves identity theft. *Id*. ¶ 2.2. That requirement appears nowhere in the FCRA.

This Affidavit offers no factual evidence that the disputed tradelines are inaccurate. It is simply Plaintiff's idiosyncratic legal theory about what verification should entail. It does not show that the balances, statuses, payment histories, or account ownership information Experian reported were wrong. Without such a showing, Plaintiff's § 1681i claim fails at the threshold.

## II. THE UNDISPUTED EVIDENCE SHOWS EXPERIAN CONDUCTED REASONABLE REINVESTIGATIONS

Plaintiff next argues that "genuine disputes" exist regarding the reasonableness of Experian's reinvestigations. The documents he cites show the opposite: Experian did exactly what § 1681i contemplates.

In opposition, Plaintiff simply asserts that no "reasonable" reinvestigation occurred. Dkt. 33 ¶¶ 11–13. But he identifies no evidence that Experian failed to forward his information to the furnishers, ignored particular documents, or deviated from the procedures it describes in its letters and CFPB responses.

Instead, Plaintiff's position is that Experian's reinvestigations must be deemed unreasonable because they did not produce his desired result. That is not the legal standard. Section 1681i requires reasonable procedures, not a particular outcome. Courts routinely grant summary judgment where, as here, a CRA forwards a dispute to the furnisher, receives verification, and the consumer offers nothing more than disagreement and speculation about what the furnisher "should" have concluded.

4

Plaintiff also claims Experian violated the 30-day deadline in § 1681i. Dkt. 33-7 at 2 and Dkt. 33-9 at 3. Plaintiff admits that the reinvestigation did timely occur: he only disputes whether the reinvestigation was reasonable. Dkt. 34 at 28. Plaintiff's May 12, 2025 CFPB complaint states that he attached multiple documents, including identification, Forms 1099-C, and certificates of discharge. Dkt. 33-3 at 2. He supplies no evidence that Experian failed to comply with the statutory time frames.. Experian's Statement of Facts shows that Experian timely and properly processed Plaintiff's May 12, 2025.  Dkt. 24 ¶¶ 20, 28-31. On this record, no reasonable jury could find a procedural timing violation.

## III.     EXPERIAN COMPLIED WITH § 1681i(a)(7); PLAINTIFF'S DEMAND FOR INTERNAL PROOF EXCEEDS THE STATUTE

Plaintiff next argues that Experian failed to provide an adequate Method of Verification ("MOV") under § 1681i(a)(7). The record shows otherwise.

### A.     Plaintiff's July 5, 2025 MOV letter confirms the investigation had already been completed.

On July 5, 2025, Plaintiff sent Experian a letter titled "Method of Verification" referencing Experian File #3742-0661-20 and CFPB File #250512-20730825. Dkt. 33-8 at 1. In that letter, Plaintiff acknowledges that he previously disputed the same accounts through the CFPB and Plaintiff had already received Experian's dispute results, because he now seeks to know what "information and documents" Experian relied upon. Dkt. 33-8 at 1–2.

Section 1681i(a)(7) requires a CRA, upon request, to provide a description of the procedure used to determine the accuracy and completeness of the information, including the business name, address, and telephone number of any furnisher contacted. It does not require the CRA to provide copies of the furnishers' underlying records, internal communications, notes, or electronic

dispute-response forms, or "Proof of authority," "power of attorney," or other documentation of the kind Plaintiff demands.

**B.     Experian's Written Descriptions of Its Dispute Procedures Satisfy § 1681i(a)(7).**

Experian's communications to Plaintiff satisfy the statutory requirement. Its dispute-result letters explain that Experian contacts the furnishers or public-record vendors, forwards dispute information, requests verification, and then updates, deletes, or modifies data as warranted. Dkt. 33-10 at 1–3. Additionally, Experian's dispute results contain all the required information under § 1681i(a)(7). Dkt. 24 ¶ 33. Plaintiff's insistence that Experian must supply internal verification files, proof of power of attorney, and other documents goes far beyond what the statute requires. His dissatisfaction with the level of detail does not create a genuine dispute of material fact where the undisputed record shows that Experian described its procedures and identified the relevant furnishers.

**IV.     PLAINTIFF'S "ONGOING DISPUTE ACTIVITY" DOES NOT ESTABLISH A STATUTORY VIOLATION OR CREATE A TRIABLE ISSUE ON "REASONABLENESS"**

Plaintiff emphasizes that he filed multiple CFPB complaints, sent several letters (including his "Notice of Claim"), and continued to dispute the tradelines. He suggests that this "pattern" of dispute activity itself creates a fact issue for the jury. What matters under Rule 56, however, is not how many letters a plaintiff sends, but whether there is evidence that Experian reported inaccurate information or Experian failed to follow reasonable reinvestigation procedures.

Here, Plaintiff's own exhibits demonstrate that Experian responded to his disputes and followed its standard reasonable reinvestigation process. The volume of Plaintiff's correspondence

does not convert his personal legal theories (about 1099-Cs, self-drafted "discharge" forms, and Social Security "control numbers") into evidence of statutory non-compliance.

Plaintiff argues that because Experian acknowledges receiving and handling his disputes, that alone creates a jury question on whether its actions were "reasonable." That is incorrect.

It is undisputed that when Experian received Plaintiff's disputes, it initiated reinvestigations, contacted the furnishers, and communicated the outcomes.

Plaintiff does not identify evidence from which a reasonable jury could find that Experian's procedures were unreasonable in light of the information he provided. Plaintiff's declaration simply asserts the conclusion that the reinvestigation was not "reasonable." Dkt. 33-1 ¶ 13. His CFPB materials, by contrast, demonstrate that Experian followed the process it describes, and his "Notice of Claim" is a demand letter that adds argument, not evidence of a departure from Experian's procedures.

A plaintiff cannot survive summary judgment under § 1681i by reciting the statutory term "reasonable" and disagreeing with the result. Absent evidence that Experian ignored clearly erroneous data or failed to carry out the steps it describes, there is no triable issue.

## V. PLAINTIFF'S IDENTITY-THEFT AND BANKRUPTCY THEORIES DO NOT PRECLUDE SUMMARY JUDGMENT

Plaintiff asserts that some of the accounts involved "identity theft" and that others were discharged in bankruptcy or cancelled via 1099-C, and that these assertions themselves create fact issues.

As to identity theft, none of the tradelines disputed in this lawsuit were the subject of Plaintiff's identity theft claim. Experian reviewed the claim and properly responded under its policies and procedures. On July 11, 2025, Plaintiff submitted a Federal Trade Commission Identity Theft Report ("ITR") which identified only one account as fraudulent. Within four days

of receiving the notice, Experian blocked that single account (which is not the subject of the current lawsuit). Dkt. 24 ¶¶ 13–16. As to the accounts referenced in the subject lawsuit, Plaintiff provides no documentary evidence that any disputed tradeline was opened by an impostor, that the accounts were flagged as fraud by the furnishers, or that any law enforcement report substantiates identity theft. His sole "evidence" is his Affidavit of Identity and his personal "control number" theory, which does not contradict the furnishers' verification or Experian's reporting.

As to bankruptcy/cancellation, Plaintiff provides no official bankruptcy discharge order covering the accounts at issue; instead, he attaches his own "certificates of discharge" and alleged 1099-Cs. Even if those documents have legal implications for his relationship with the creditors (they do not) they do not show that the information Experian reported, account existence, ownership, and status as furnished at the time, was factually wrong.

Without evidence of objective inaccuracy, neither the identity-theft label nor the claimed discharge/cancellation theory can defeat summary judgment.

## VI. PLAINTIFF HAS NOT SHOWN ANY COMPENSABLE DAMAGES CAUSED BY EXPERIAN

Even if Plaintiff could identify some technical violation (he cannot), he still has not adduced evidence of damages caused by Experian's alleged FCRA non-compliance. Plaintiff offers no admissible evidence of a specific credit denial tied to Experian's reporting of the particular accounts at issues and his assertions of emotional distress and reputational harm are wholly conclusory and uncorroborated.

Because Plaintiff has not shown a violation in the first place, the Court need not reach damages. But even if it did, the lack of concrete, causally linked harm is an additional reason his claims cannot survive summary judgment.

8

## VII.   "REASONABLENESS" AND "CREDIBILITY" DO NOT AUTOMATICALLY BAR SUMMARY JUDGMENT

Plaintiff suggests that any case involving "reasonableness" or "credibility" must go to a jury. That is not the law. Rule 56 expressly permits summary judgment where, as here, the non-movant fails to produce evidence sufficient for a reasonable jury to find in his favor. The record shows no specific, factual inaccuracy in Experian's reporting of the disputed tradelines, no evidence that Experian failed to follow its described reinvestigation procedures, and no statutory entitlement to the level of verification detail Plaintiff demands under § 1681i(a)(7).

Where the material facts are not genuinely disputed and the only quarrel is with legal conclusions Plaintiff draws from them, summary judgment is appropriate.

### CONCLUSION

Plaintiff's opposition confirms that he cannot identify any concrete falsehood in Experian's reporting of the disputed accounts, cannot show that Experian failed to conduct reinvestigations consistent with the FCRA, and relies on theories that are legally insufficient under the FCRA.

Because there is no genuine dispute of material fact and Experian is entitled to judgment as a matter of law, Experian respectfully requests that the Court grant its Motion for Summary Judgment in full and enter judgment in Experian's favor on all claims.

Respectfully submitted,

Dated: May 2, 2026                              Respectfully Submitted,

/s/ R. Kyle Driggers
R. Kyle Driggers (N.C. Bar No. 62334)
TROUTMAN PEPPER LOCKE LLP
305 Church at N. Hills St., #1200
Raleigh, NC 27609
Telephone: 919-835-4145
Email: kyle.driggers@troutman.com

9

*Counsel for Defendant Experian Information Solutions, Inc.*

10

**CERTIFICATE OF SERVICE**

I certify that on May 4, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served via regular mail upon:

Gilbert Bryan
5506 Dodge Drive
Fayetteville, NC 28303
*Pro Se Plaintiff*

*/s/ R. Kyle Driggers*
R. Kyle Driggers