IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-585-BO-RN

| | | |
|---|---|---|
| GILBERT BRYAN,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., *Experian plc, Central Source LLC, New management Services LLC, Online Date Exchange LLC, Opt-out Services LLC, VantageScore Solutions LLC*<br><br>Defendant. | ) | **ORDER** |

This cause comes before the Court on plaintiff's motion for partial summary judgment, [DE 18], and defendant's motion for summary judgment, [DE 22]. The Court also considers plaintiff's motion for limited relief, [DE 29], and plaintiff's motion requesting resolution, [DE 44]. The appropriate responses and replies have been filed, or the time for doing so has expired. For the following reasons, the Court DENIES plaintiff's motion for partial summary judgment, [DE 18]; GRANTS defendant's motion for summary judgment, [DE 22]; and DENIES AS MOOT plaintiff's motion for limited relief, [DE 29], and plaintiff's motion requesting resolution [DE 44].

## I. PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, initiated this action on August 11, 2025, by filing the complaint in Cumberland County Superior Court [DE 1-1]. The complaint alleges that defendant violated the Fair Credit Reporting Act ("FCRA") by (1) failing to conduct a reasonable reinvestigation and correct disputed information, in violation of 15 U.S.C. § 1681i; (2) failing to

block fraudulent information within four business days, in violation of 15 U.S.C. § 1681c-2; (3) failing to provide required disclosures and the method of verification for disputed items upon request, in violation of 15 U.S.C. § 1681i(a)(7); (4) violating 15 U.S.C. § 1681n by willful noncompliance; (5) collecting discharged debts in violation of 11 U.S.C. §§ 524(a)(2) and 525(a). [DE 1]. Plaintiff's requested relief is (a) a permanent injunction enjoining defendant from further violations of the FCRA and federal bankruptcy laws; (b) award of damages; and (c) for the Court to order defendant to permanently delete or correct all erroneous and fraudulent accounts from plaintiff's credit file within 10 days. [DE 1-1]. Defendant removed the action to this Court on September 12, 2025 [DE 1].

On February 12, 2026, Plaintiff filed a partial motion for summary judgment and the requisite statement of undisputed material facts required by the Local Civil Rules of this Court [DE 18; DE 19]. On February 24, 2026, defendant responded and filed a statement of material facts in opposition to plaintiff's motion [DE 27; DE 28].

On February 17, 2026, defendant also filed its own motion for summary judgment and the requisite statement of undisputed material facts [DE 22; DE 24]. On February 26, 2026, plaintiff responded [DE 29]. On April 22, 2026, plaintiff responded to defendant's statement of material facts, [DE 34], and filed an "additional" statement of material facts [DE 35]. On May 4, 2026, defendant replied, [DE 38], and filed a statement of material facts in opposition to plaintiff's, [DE 39].

## II. FACTUAL BACKGROUND

The Court, in the exercise of its discretion, considers first defendant's motion for summary judgment. The Court thus recites the factual allegations in support of or in opposition to

defendant's motion for summary judgment [DE 22]. The following facts are undisputed, unless otherwise noted. [DE 24; DE 34].

Defendant Experian Information Solutions is a consumer reporting agency as defined by the FCRA and maintains files for millions of consumers. Plaintiff Bryan Glibert is a consumer as defined by the FCRA. Experian maintains procedures to assure maximum possible accuracy of the information it reports on consumers, consistent with the requirements of the FCRA. Experian, like the other major credit reporting agencies ("CRAs"), regularly receives consumer credit information from various sources ("furnishers") around the country.

Experian only allows entities whom it thoroughly vets to contribute consumer credit information in accordance with strict, contracted obligations. Experian monitors every monthly submission from every data furnisher to ensure that no information violates the prescriptions of the FCRA or the industry standards applicable to their data. Data furnishers are contracted and pledge to make every effort to report only accurate information and adhere to the FCRA sections applicable to their reporting. Experian also thoroughly credentials every data furnisher and its data before and after it is permitted to transmit information for inclusion in the credit reporting database.

Experian has systemic processes which alert it if a data furnisher's monthly submission exceeds expected thresholds or alters from its trended and usual reporting patterns. Section 1681i of the FCRA requires Experian to reinvestigate information disputed by any consumers.

Generally, when a consumer contacts Experian to dispute the accuracy of an account on the consumer's credit file, Experian will first review all relevant information provided by the consumer. If the consumer provides supporting documentation with the dispute, Experian reviews the documentation to determine whether it can be authenticated, and if that documentation is sufficient to delete or update the account as requested by the consumer. If the supporting

documentation is not sufficient to delete or update the account as requested by the consumer, Experian initiates its reinvestigation via an electronically transmitted, automated dispute verification form ("ACDV") to the source, or furnisher, of the disputed information.

Accordingly, the furnisher will either verify the account as reported, instruct Experian to modify any information regarding the account, or delete the disputed information if it is found to be inaccurate. When data furnishers respond to an ACDV or CDV, they certify to Experian that they have (i) reviewed all information, correspondence, and documents forwarded by Experian, and (ii) confirmed the accuracy of the information contained in the data furnisher's response. Experian then reviews the data furnisher's ACDV or CDV response in accordance with Experian's own policies and procedures and afterward updates its reporting accordingly.

On December 9, 2024, plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), CFPB # 241209-17351732, in which he claimed five accounts were impacted by identity theft. None of these accounts are the subject of the present lawsuit. On December 13, 2024, Experian communicated with plaintiff regarding his December 9, 2024 dispute and identity theft claims and informed plaintiff of why Experian was declining plaintiff's request to block one or more items of information.

Plaintiff submitted a Federal Trade Commission Identity Theft Report ("ITR") on or about July 11, 2025, which identified only one account as fraudulent. That account was an LVNV account that is not referenced by plaintiff in this litigation. The LVNV tradeline is also not the subject of the present lawsuit. Within four business days of receipt, Experian blocked that LVNV account and informed plaintiff of that action on July 17, 2025. Neither theft report includes any of the Disputed Accounts. No USAA accounts are listed and the JPMCB account identified ends in

a different account number (6570) than the JPMCB account (5485) that is the subject of this litigation.

Plaintiff filed his complaint on August 11, 2025, alleging Experian violated the Fair Credit Reporting Act and of the U.S. Bankruptcy Code. All of plaintiff's claims arise from the following accounts: (1) JPMCB (XXXXXXXX5485) (the "JPMCB Account"); (2) USAA Federal Savings Bank (XXXXXXXX4916) (the "USAA Account #1"); and (3) USAA Federal Savings Bank (XXXXXXXX0710) (the "USAA Account #2") (collectively, the "Disputed Accounts").

On May 12, 2025, plaintiff filed a complaint with the CFPB, CFPB # 250512-20730825, in which he alleged the reporting of the Disputed Accounts in violation of the U.S. Bankruptcy Code. Attached to that complaint were multiple "notarized Certificate of Discharge" on "Official Substitute Form 101" ("Form 101") indicating the plaintiff's discharge under Chapter 11 of the Bankruptcy Code on various dates in 2021.

This Court takes judicial notice that Official Form 101 is a petition for bankruptcy, not an order of discharge.

The Form 101s did not include a complete case number, did not contain a PACER header, and were signed in the presence of a notary by the Plaintiff, not a member of the bankruptcy court. Further, the Form 101s indicated discharge dates in 2021, but were executed May 12, 2025. A search of the National Pacer Locator using plaintiff's complete social security number for any bankruptcy filing yields no results.

This Court takes judicial notice of the records of the United States Bankruptcy Courts that do not have any record of a bankruptcy filing or discharge by the plaintiff.

Also attached to this CFPB Complaint and as Exhibit B to plaintiff's complaint were purported 1099-Cs for the Disputed Accounts. On each and every 1099-C, the drafter: (1)

incorrectly identified the plaintiff as the creditor and not the debtor; (2) incorrectly identified the creditor as the debtor plaintiff; (3) incorrectly placed the plaintiff's social security number in the section for the creditor's Tax Identification Number ("TIN"); (4) incorrectly placed the creditors' TINs in the section for the Debtor (i.e., plaintiff); and (5) identified the Identifiable Event Code as "A" – a chapter 11 Bankruptcy discharge despite there being no record of such a bankruptcy.

The May 2025 dispute references the two USAA accounts subject to the current dispute and four other accounts. Experian reinvestigated plaintiff's May 2025 dispute via electronically transmitted dispute verification forms (the "ACDVs"). In response to the disputes submitted by plaintiff, the furnishers confirmed the accuracy of Experian's reporting. Once the reinvestigation was completed, Experian sent a notice and summary of the results to plaintiff on May 29, 2025.

On June 13, 2025, plaintiff filed a complaint with the CFPB, CFPB # 250614-21547062, in which he incorrectly alleged that Experian had not responded to his May 12, 2025, CFPB complaint within 30 days. Experian reinvestigated plaintiff's disputes via ACDVs. In response to the disputes submitted by plaintiff, the furnishers confirmed the accuracy of Experian's reporting.

Once a reinvestigation is complete, Experian sends a notice and summary of the results to the consumer. Experian internally refers to that notice and summary as a Consumer Disclosure Final ("CDF"). Experian provided plaintiff with dispute results on December 9, 2024, December 13, 2024, December 30, 2024, January 2, 2025, January 6, 2025, May 29, 2025, June 20, 2025, July 17, 2025, and July 25, 2025.

On July 5, 2025, plaintiff made a request for method of verification "MOV". On March 24, 2025, May 20, 2025, and July 17, 2025, Experian provided plaintiff with letters that provide plaintiff with the methods Experian used to verify its reporting. The dispute results provided by Experian also include responses to plaintiff's MOV requests.

Plaintiff does not dispute the foregoing facts, but disagrees—without evidence to the contrary—that Experian's investigation methods were sufficient, accurate, or complete. His disagreement, alone, fails to create a dispute of material fact.

## III. LEGAL STANDARD

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Moreover, in this district, Local Civil Rule 56.1 requires that any motion for summary judgment must be supported by a separate statement of facts which the movant contends are undisputed. Local Civil Rule 56.1(a)(1). The rule further requires that "[t]he memorandum opposing a motion for summary

judgment shall be supported by a separate statement that includes a response to each numbered paragraph in the movant's statement" of material facts and that "[e]ach numbered paragraph in the movant's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2).

Where, as here, the parties have filed cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. <u>DISCUSSION</u>

Defendant moves for summary judgment on all plaintiff's claim. The Court addresses each claim in turn.

1. <u>15 U.S.C. § 1691i</u>

Plaintiff's first claim is for violation of 15 U.S.C. § 1691i, for failing to conduct a reasonable reinvestigation and correct disputed information. When a consumer disputes the accuracy of information contained in his file and notifies the CRA, 15 U.S.C. § 1681i imposes a duty on the CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . ." 15 U.S.C. § 1681i(a)(1)(A). "[T]o state a claim, a consumer must allege facts that, if true, indicate an inaccuracy or incompleteness in their credit report that is *objectively and readily verifiable.*" *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 253 (4th Cir. 2025) (emphasis added). "Inaccuracies

that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Id.* at 251.

The foremost question before the Court is whether plaintiff has pled that an objectively and readily verifiable inaccuracy appeared in his credit report. Defendant contends he has not, because he has not identified specific information in any tradeline that is false. Instead, plaintiff baselessly alleges the disputed accounts are not his, were discharged in bankruptcy, or were cancelled by a Form 1099-C. However, the JPMCB tradeline referenced in the complaint is not the same one that appears in plaintiff's identity theft dispute. Moreover, no public record exists that verifies that plaintiff filed for bankruptcy. And, there are such inaccuracies in the 1099-C's that plaintiff provided, that no reasonable jury would find they are authentic.

Plaintiff has failed to proffer facts sufficient to show a material dispute as to whether there was an objectively and readily verifiable inaccuracy or incompleteness in his credit report. Defendant is entitled to summary judgment on this claim.

2. <u>15 U.S.C. § 1681c-2</u>

Plaintiff's second claim is for violation of 15 U.S.C. § 1681c-2, for failing to block fraudulent information within four business days. Section 1681c-2 provides, in part:

> (a) Except as otherwise provided in this section, a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from the alleged identity theft, not later than 4 business days after the date of receipt by such agency . . . .
> (b) A consumer reporting agency shall promptly notify the furnisher of information identified by the consumer . . . (1) that the information may be a result of identity theft; [or] (2) that an identity theft report has been filed . . . .

*Id.*

Plaintiff filed a complaint with the CFPB claiming identity theft related to five accounts on December 9, 2024 (CFPB # 241209-17351732). However, this CFPB complaint does not concern any of the Disputed Accounts in this action. On December 13, 2024, defendant informed plaintiff by letter the reasons why it declined to block the items of information. On July 11, 2025, plaintiff also submitted a dispute stating that an LVNV account was not his, and that it was the result of identity theft. That tradeline is not the subject of plaintiff's dispute in this complaint. Moreover, on July 17, 2025, defendant provided its investigative results to plaintiff regarding the LVNV account, which stated that the LVNV account had been removed from plaintiff's credit report. Because this claim is not related to the Disputed Accounts in plaintiff's complaint in this action, and the LVNV account was removed from plaintiff's credit report, plaintiff has failed to create a genuine issue of material fact as to whether defendant violated Section 1681c-2. Defendant has demonstrated that it is entitled to summary judgment on this claim.

3. <u>15 U.S.C. § 1681i(a)(7)</u>

Plaintiff's third claim is for violation of 15 U.S.C. § 1681i(a)(7), for failing to provide required disclosures and the method of verification for disputed items. That statute establishes that "[a] consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description." § 1681i(a)(7). The relevant description in paragraph (6)(B)(iii) is " a description of the procedure used to determine the accuracy and completeness of the information . . . , including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available[.]" 15 U.S.C. § 1681i(6)(B)(iii). The evidence shows that defendant provided dispute results to plaintiff, providing numerous responses to his requests for their methods of verification. [DE 24] at 6, ¶¶ 32-33; [DE

25-1] at ¶ 42; [DE 25-2; DE 25-3; DE 25-4; DE 25-5; DE 25-6; DE 25-7; DE 25-8; DE 25-9; DE 25-10; DE 25-11; DE 25-16]. Plaintiff has failed to rebut this evidence or create a genuine issue of material fact as to whether such responses were provided. [DE 34] at ¶¶ 31-33. As such, plaintiff's claim fails.

Plaintiff seeks entry of partial summary judgment in his favor on his claim under 15 U.S.C. § 1681i(a)(7). He argues that there is no genuine issue of material fact as to whether defendant failed to disclose the method of verification after plaintiff's request. However, as discussed above, defendant is entitled to summary judgment in its favor on this claim because, even viewing the facts in the light most favorable to plaintiff as the non-moving party, the record evidence supports that defendant provided dispute results to plaintiff by providing numerous responses to his requests for their methods of verification and plaintiff has failed to show that any of defendant's responses were somehow deficient. Summary judgment on this claim is warranted in favor of defendant, and plaintiff's motion for partial summary judgment must therefore be denied.

4. 15 U.S.C. § 1681(n)

Plaintiff's fourth claim is for violating 15 U.S.C. § 1681(n), alleging that defendant was willfully noncompliant in failing to correct or delete inaccurate information. That Section provides that a consumer protection agency that willfully fails to comply with the FCRA is civilly liable to the injured consumer. *See id.* A company subject to the FCRA does not act in reckless disregard of its requirements unless its action is objectively unreasonable. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68–70 (2007). In conducting its reinvestigations, and in concluding that good cause did not exist to change or delete information in plaintiff's credit report, defendant reasonably relied on the information reported to it by thoroughly-vetted furnishers. As such, plaintiff has not

shown that defendant was noncompliant, or, much less, willfully noncompliant. Plaintiff's claim fails.

5. 11 U.S.C. §§ 524(a)(2) and 525(a)

Plaintiff's final claim is for violating 11 U.S.C. §§ 524(a)(2) and 525(a), for reporting and allowing the collection of discharged debts.

Section 524(a)(2) provides that a discharge under the Bankruptcy code "operates as an injunction against the commencement or continuation of an action, the employment of a process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." *Id.* Plaintiff has proffered no evidence to show that defendant attempted to collect a debt in violation of a valid discharge. Therefore, plaintiff's claim under Section 524(a)(2) fails.

Section 525 establishes two prohibitions. First:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . .

11 U.S.C. § 525(a). Second:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act . . . .

11 U.S.C. § 525(b).

Plaintiff has not alleged that defendant is a governmental agency or that he has sought employment with defendant. He has also not alleged any discriminatory conduct on the part of defendant. Therefore, plaintiff's claim under this Section also fails.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment, [DE 18], is DENIED; defendant's motion for summary judgment, [DE 22], is GRANTED; plaintiff's motion for limited relief, [DE 29], and plaintiff's motion requesting resolution, [DE 44], are DENIED AS MOOT. As such, the Clerk is DIRECTED to enter judgment in favor of defendant and close the case.

SO ORDERED, this 29 day of September, 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE